# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA



FILED
JAN 10 2022
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N.C.
By ___

SUSIE JORDAN, as Parent and
Guardian Ad Litem of A.E.J. (a
minor) and B.A.J. (a minor), and
SUSIE JORDAN, individually,
                    *Plaintiffs,*

v.

CHATHAM COUNTY SCHOOLS,
in its official capacity; DAN
BARNWELL; G. DOE (a minor); M.
DOE (a minor); GYM TEACHER
DOE A; GYM TEACHER DOE B;
DOES 1 through 20.

                    *Defendants.*

Case No. 1:22 CV12

**COMPLAINT FOR
VIOLATIONS OF TITLE II
OF THE AMERICANS WITH
DISABILITIES ACT,
SECTION 504 OF THE
REHABILITATION ACT OF
1973, ASSAULT AND
BATTERY, NEGLIGENCE,
AND NEGLIGENT
INFLICTION OF
EMOTIONAL DISTRESS**

**JURY TRIAL DEMANDED**

---

**NOW COMES** Plaintiffs, SUSIE JORDAN, individually and as

Parent and Guardian Ad Litem of A.E.J. (a minor) and B.A.J. (a minor),

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 1 of 38

inclusive, to their Complaint *pro se* against the Defendants and hereby state as follows:

## BACKGROUND

1. This action arises from the discrimination, bullying and indifference that A.E.J. and B.A.J experienced while they were students at the Bennett School in the Chatham County School District.

## PARTIES

2. Plaintiff Susie Jordan ("JORDAN") is an adult individual as well as mother and Natural Guardian of Plaintiffs A.E.J. and B.A.J., both minors who attended Bennett School in the Chatham County Schools District.

3. Plaintiff A.E.J. ("A.E.J.") is a minor child who attended the Bennett School in the Chatham County Schools district.

4. Plaintiff B.A.J. ("B.A.J.") is a minor child who attended the Bennett School in the Chatham County Schools district.

5. The Complaint is filed by and through their mother and Guardian ad Litem JORDAN with the consent of A.E.J. and B.A.J.

**COMPLAINT**         - 2 -

6. Defendant G. Doe was a minor child attending Bennett during the 2017-2018 school year.

7. Defendant M. Doe was a minor child attending Bennett during the 2018-2019 school year.

8. Defendant Chatham County Schools ("CHATHAM") aka Chatham County Public School System is a school district located in Chatham County, North Carolina. CHATHAM's main office is located at 369 West Street in Pittsboro, North Carolina 27312. CHATHAM operates Bennett Elementary School (BENNETT") located at 61 Randolph Street in Bennett, North Carolina 27208. CHATHAM is a federally funded entity. As a federally funded entity, CHATHAM is subject to Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

9. On information and belief, pursuant to North Carolina General Statute §115C-42, the Defendant CHATHAM is authorized and empowered to waive its governmental immunity from liability for damage by reason of injury to person caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his or her authority or within the course of his or

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 3 of 38

her employment by obtaining liability insurance for the negligence of torts of its agents or employees.

10. On information and belief, at all times relevant to this action Defendant CHATHAM had waived governmental immunity through the purchase of liability insurance.

11. During the 2017-2018 School Year, Defendant Dan Barnwell ("Barnwell") was an employee of CHATHAM working as the Principal at Bennett School.

12. During the 2017-2018 School Year, Defendant Gym Teacher Doe A ("Gym Teacher Doe A") was an employee of CHATHAM working as the Gym Teacher at Bennett School.

13. During the 2018-2019 School Year, Defendant Gym Teacher Doe B ("Gym Teacher Doe B") was an employee of CHATHAM working as the Gym Teacher at Bennett School.

14. DOES 1-20 ("Doe Defendants") are individuals who were employed by CHATHAM during all times relevant to this litigation. The names and job titles of the Doe Defendants are currently unknown.

COMPLAINT - 4 -

## JURISDICTION & VENUE

15. This action arises under the laws of the United States. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

16. This action arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title II of the ADA, prohibits discrimination within public entities, the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

17. In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims. This is because the state law claims are so closely related to the federal question claims that it

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 5 of 38

forms the same case or controversy under Article III of the United States Constitution.

18.  This Court properly exercises personal jurisdiction over Defendant CHATHAM on the grounds that it is located and conducts business within the Middle District of North Carolina.

19.  This Court properly exercises personal jurisdiction over Defendant Barnwell on the grounds that he is domiciled within the Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

20.  This Court properly exercises personal jurisdiction over Defendant M. Doe on the grounds that he is domiciled within the Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

21.  This Court properly exercises personal jurisdiction over Defendant G. Doe on the grounds that he is domiciled within the Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

22.  This Court properly exercises personal jurisdiction over Defendant Gym Teacher Doe A on the grounds that he is domiciled within the

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 6 of 38

Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

23.  This Court properly exercises personal jurisdiction over Defendant Gym Teacher Doe B on the grounds that he is domiciled within the Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

24.  This Court properly exercises personal jurisdiction over Doe Defendant 1-20 on the grounds that they are domiciled within the Middle District of North Carolina and violated certain rights, the effects of which were felt in the Middle District of North Carolina.

25.  Venue in this action is proper in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C.S. § 1391 because the events relevant to this action occurred primarily within the geographical confines of the Middle District of North Carolina.

## FACTUAL ALLEGATIONS

26.  A.E.J. and B.A.J. attended Bennett School in the Chatham County Public School System. Their attendance at Bennett began in 2012 and

COMPLAINT                           - 7 -

continued until 2019. Both were excellent students with above-average grades.

27. A.E.J. has been mentioned in the local newspaper for being an outstanding honor roll student.

28. B.A.J. has Asperger's syndrome, a condition on the autism spectrum. The Staff of Bennett was aware of B.A.J.'s condition for the entirety of her enrollment at Bennett.

29. Because of her condition, B.A.J. was bullied by her peers at Bennett from her first day at the school in 2012.

30. In particular, Barnwell's daughter, T. DOE (a minor) and another student, S. DOE regularly bullied B.A.J. on the basis of B.A.J.'s autism.

31. On many occasions, T. DOE and S. DOE took turns preventing B.A.J. from using the bathroom to such an extent that B.A.J. would soil the clothes she was wearing. This behavior occurred so often that JORDAN would sometimes have to come to the school several times per week in order to provide B.A.J. with new clothes.

32. Over the course of several years, JORDAN weekly spoke with Barnwell, in his role as the school principal, about his daughter's

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 8 of 38

bullying behavior toward B.A.J. Barnwell did nothing to help JORDAN or B.A.J.

33.   On September 11, 2017, B.A.J. was pushed to the floor in her physical education class. A.E.J. went to help B.A.J. and managed to help B.A.J. sit on a bench.  While B.A.J. was sitting on the bench, a boy in the class, G. Doe, went up to A.E.J. and hit her with a ball in the head. He continued to hit A.E.J. in a repetitious manner five (5) or six (6) times, without the ball ever leaving his hand ("September 2017 Incident")

34.   At the time of the September 2017 Incident, G. Doe was under suspension. Due to his suspension, he should have never been allowed to be in the PE class.

35.   B.A.J. was left with large bruises as a result of the September 2017 Incident.

36.   For days after the September 2017 Incident, A.E.J. felt sick to her stomach and had neck pain, which lead to a medical diagnosis of a concussion.

37.   JORDAN was never informed of the September 2017 Incident by the school, but instead had to be told by other parents.

COMPLAINT                    - 9 -

38. On September 15, 2017, JORDAN had a phone call with Tracy Fowler, Executive Director of Student Services at CHATHAM to discuss the September 2017 Incident. During this meeting, JORDAN mentioned the ongoing bullying against B.A.J. No action was taken as a result of this phone call.

39. On September 19, 2017, JORDAN met with BARWELL and Tracy Fowler to discuss September 2017 Incident. Barnwell informed JORDAN that there existed video footage of The Incident. However, JORDAN's request to see it was denied by Barnwell. Barnwell also refused to allow JORDAN to speak with the gym teacher about the September 2017 Incident. In doing so, Barnwell effectively shielded JORDAN from all evidence of what had happened.

40. During this second meeting, JORDAN again raised the issue of systematic bullying at Bennett School against B.A.J. Again, nothing was done to help B.A.J.

41. Based on the September 2017 Incident, and other similarly outrageous incidents, Barnwell was forced to resign from the role of Bennett school's principal in early 2018.

42. After the September 2017 Incident, A.E.J. and B.A.J. no longer felt safe at BENNETT.

43. As a result, JORDAN made the difficult decision to homeschool A.E.J. and B.A.J. for approximately five months from September 2017, until February 2018.

44. In January of 2019, a more severe incident occurred. This time, again during PE class, classmate M. DOE was standing less than ten feet away from her when he slammed the ball in her left temple ("January 2019 Incident").

45. The impact of the hit was so severe, that A.E.J. does not remember being hit. This time, JORDAN was given access to the video footage which showed A.E.J. trying to walk, and then tumbling to the floor.

46. This incident left A.E.J. with a severe concussion and damage to the C-2 to C-7 vertebrae in her neck and upper back.

47. As a result of the injuries sustained during this incident, she was diagnosed with post-concussion syndrome.

48. The post-concussion syndrome has a severe negative impacted on A.E.J.'s vision including, but not limited to, diminishing vision and eye coordination. More specifically, the damage to her left eye causes

COMPLAINT                                    - 11 -

her to suffer from double vision. Having double vision results in continuous motion sickness and constant migraine headaches to the extent that she must take migraine medication. In addition, A.E.J. suffers from difficulty with her vestibular system. The vestibular system is essential to normal movement and equilibrium.

49. As a result of the injuries, she sustained from the January 2019 incident, A.E.J.'s ability to read has been jeopardized.

50. The cost of necessary treatment and therapies stemming from A.E.J.'s injuries from the January 2019 Incident has reached several thousand dollars.

51. As a result of A.E.J.'s injuries, she also now needs special accommodations to continue school. She was unable to continue her early college program. Had she not been injured, A.E.J. would have finished her early college program, would have started college, and would be well on the way to pursuing her dream of becoming a veterinarian.

52. As a result of their experiences at BENNETT, A.E.J., and B.A.J. both suffer from severe depression. To date, A.E.J. has also lost more than 30 lbs. since January of 2019.

Case 1:22-cv-00012-WO-JEP Document 1 Filed 01/10/22 Page 12 of 38

## Respondeat Superior and Agency

53. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

54. Under Federal and North Carolina State law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

55. At the times relevant to this action, Defendants Barnwell, Gym Teacher Doe A, Gym Teacher Doe B, and Doe Defendants 1-20 were employed by CHATHAM. The acts and omissions of Barnwell, Gym Teacher Doe A, Gym Teacher Doe B, and Doe Defendants 1-20 relevant to this action were undertaken within the scope of their employment with CHATHAM.

## FIRST CAUSE OF ACTION
### Violation of Title II of the Americans with Disabilities Act
### (Related to B.A. DOE)
### (Against Defendant CHATHAM)

56. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 13 of 38

57. B.A.J. is a "qualified individual with a disability" as defined in 42 U.S.C. §1231(2). She has been diagnosed with Asperger's syndrome.

58. B.A.J.'s Asperger's syndrome often causes B.A.J. to behave in a manner that is considered unusual. This behavior in turn often causes B.A.J. to be bullied by her peers. Asperger's syndrome therefore substantially impairs her ability to engage in the normal life activity of communication.

59. CHATHAM is a public school district and as such is subject to the provisions of Title II of the Americans with Disabilities Act.

60. The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

61. At all times while B.A.J. was enrolled at Bennett, the teachers and staff at Bennett were aware of B.A.J.'s disability. All the teachers and staff at Bennett were employed by CHATHAM.

62. B.A.J. was denied reasonable accommodations for her disability as follows:

        a. B.A.J. was severely bullied by her classmates because of her disability. Most notably T. Doe and S. Doe relentlessly

bullied B.A.J. over the course of years. This bullying was often done publicly, as T. Doe and S. Doe would often prevent B.A.J. from using the bathroom, forcing her to soil her clothes. Bennett employees knew that JORDAN had to come to the school on a weekly basis to provide a change of clothes for B.A.J. Furthermore, JORDAN attempted to address the bullying of B.A.J. with Barnwell on a weekly basis. This bullying caused B.A.J. continual and extreme emotional distress. Despite being aware of the situation, CHATHAM, through its employees, did nothing to protect B.A. DOE and did not undertake any actions to curb the bullying from T. Doe and S. Doe.

b. On September 11, 2017, B.A.J. was again singled because of her disability when she was viciously pushed to the ground by a classmate. Despite being aware of B.A.J.'s propensity to be bullied, CHATHAM, through its employees, did nothing to prevent this incident and did not undertake any action afterward to prevent it from

happening again. B.A.J. suffered serious bruises from this incident.

63. As a direct and proximate result of Defendant's unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff B.A.J. has sustained extreme emotional distress and physical injuries.

## SECOND CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973
### (Related to B.A. DOE)
### (Against Defendant CHATHAM)

64. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

65. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 bars all federally funded entities from discriminating based on disability. Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

COMPLAINT                              - 16 -

66. CHATHAM is a public school, receiving federal funding. Therefore, it is subject to Section 504 of the Rehabilitation Act of 1973.

67. B.A.J. is a disabled person and has been diagnosed with Asperger's syndrome.

68. B.A.J.'s Asperger's syndrome often causes B.A.J. to behave in a manner that is considered unusual. This behavior in turn often causes B.A.J. to be bullied by her peers. Asperger's syndrome therefore substantially impairs her ability to engage in the normal life activity of communication.

69. B.A.J. is a disabled individual who was otherwise qualified to attend and continue her education at CHATHAM.

70. The Rehabilitation Act and its implementing regulations require that Defendants administer programs and activities in the most integrated setting appropriate to the needs of qualified disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R. § 84.4.

71. At all times while B.A.J. was enrolled at Bennett, the teachers and staff at Bennett were aware of B.A.J.'s disability. All the teachers and staff at Bennett were employed by CHATHAM.

72. B.A.J. was denied reasonable accommodations for her disability as follows:

   a. B.A.J. was severely bullied by her classmates because of her disability. Most notably T. Doe and S. Doe relentlessly bullied B.A.J. over the course of years. This bullying was often done publicly, as T. Doe and S. Doe would often prevent B.A.J.from using the bathroom, forcing her to soil her clothes. Bennett employees knew that JORDAN had to come to the school on a weekly basis to provide a change of clothes for B.A.J. Furthermore, JORDAN attempted to address the bullying of B.A.J. with Barnwell on a weekly basis. This bullying caused B.A.J. continual and extreme emotional distress. Despite being aware of the situation, CHATHAM, through its employees, did nothing to protect B.A.J. and did not undertake any actions to curb the bullying from T. Doe and S. Doe.

   b. On September 11, 2017, B.A.J. was again singled because of her disability when she was viciously pushed to the ground by a classmate. Despite being aware of B.A.J.'s

propensity to be bullied, CHATHAM, through its employees, did nothing to prevent this incident and did not undertake any action afterward to prevent it from happening again. B.A.J. suffered serious bruises from this incident.

73. As a direct and proximate result of Defendant's unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff B.A.J. has sustained extreme emotional distress and physical injuries.

## THIRD CAUSE OF ACTION
### Assault And Battery
### (Against Defendant G. Doe)

74. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

75. During the 2017 Incident, G. Doe approached A.E.J. and hit her with a ball in the head. He continued to hit A.E.J. in a repetitious manner, five or six times without the ball ever leaving his hand.

COMPLAINT                           - 19 -

76.   For days after the September 2017 Incident, A.E.J. felt sick to her stomach and had neck pain, which lead to a medical diagnosis of a concussion.

77.   By approaching A.E.J. and striking her in the head, G. Doe intentionally put A.E.J. in the apprehension of physical harm. This action further demonstrated that G. Doe wished to cause A.E Doe physical harm and that he had the ability to do so.

78.   By striking A.E.J. repeatedly in the head with a ball, G. Doe intentionally caused damaging physical contact on A.E.J.'s person. As a result of this damaging contact, A.E.J. felt sick to her stomach and had neck pain, which lead to a medical diagnosis of a concussion.

79.   As a direct and proximate result of Defendant's actions Plaintiff A.E.J. has sustained extreme emotional distress and physical injuries.

### FOURTH CAUSE OF ACTION
**Assault And Battery**
**(Against Defendant M. Doe)**

80.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 20 of 38

81.     During the 2019 Incident, M. Doe approached A.E.J. and hit her with a ball in her left temple. A.E.J. was hit with such force that she did not even remember being struck.

82.     By approaching A.E.J. and striking her in the head, M. Doe intentionally put A.E.J. in the apprehension of physical harm. This action further demonstrated that M. Doe wished to cause A.E Doe physical harm and that he had the ability to do so.

83.     By striking A.E.J. in the head with a ball, M. Doe intentionally caused damaging physical contact on A.E.J.'s person. As a result of this damaging contact, A.E.J. has suffered severe physical and mental consequences.

84.     As a result of the 2019 Incident, A.E.J. suffered several medical consequences, including:

        a. A.E.J. suffered a severe concussion.

        b. A.E.J. suffered damage to her C-2 to C-7 vertebrae.

        c. A.E.J. continues to suffer from post-concussion syndrome.

85.     As a result of the damage to her vertebrae, A.E.J. suffered from pronounced balance problems as well as issues with locomotion.

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 21 of 38

86. A.E.J.'s vision was and continues to be severely impaired as a result of the 2019 incident. A.E.J. suffers from double vision which causes her severe nausea and persistent migraine headaches.

87. Furthermore, A.E.J.'s ability to read has now been compromised due to her vision problems. As a result, A.E Doe now requires special accommodations in order to participate in school activities. A.E.J. did not require any school accommodations before the 2019 Incident.

88. Despite the accommodations, A.E.J.'s grades have drastically fallen as a result of her reading problems. Because of her reading problems, A.E.J. was unable to complete an early college course that would have put her on track to accomplish her dreams of becoming a veterinarian. Had A.E.J. not suffered from vision problems, she would have been able to complete the early college course.

89. The severe physical harm inflicted on A.E.J. because of the 2019 Incident has also caused A.E.J. to develop severe depression. A.E.J. has lost over 30 pounds since the 2019 Incident and continues to experience intense feelings of hopelessness and despair.

90. As a result of the severe physical and mental damage that A.E.J. has suffered from the 2019 Incident, she has had to see multiple

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 22 of 38

doctors, therapists, and other medical specialists. A.E.J. continues to require intense medical support. Since the 2019 Incident JORDAN has had to expend thousands of dollars and continues to have to spend considerable amounts of money to pay for A.E.J.'s treatment

91. As a direct and proximate result of Defendant's actions A.E.J. has sustained extreme emotional distress and physical injuries and JORDAN has incurred thousands of dollars of medical expenses and continues to incur medical expenses.

## FIFTH CAUSE OF ACTION
### Negligence
**(Against Defendant Barnwell, Defendant Gym Teacher Doe A, Doe Defendants 1-20, Defendant Chatham)**

92. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

93. During the 2017-2018 Defendant Barnwell, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 owed A.E.J. a reasonable duty as in loco parentis. As educators, the Defendants had a duty to ensure that A.E.J. was educated in a safe secure manner free from the risk of physical assault.

**COMPLAINT** - 23 -

94. At the time of the 2017 Incident, Defendant Barnwell, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 were aware that G. Doe had been suspended from school and was not supposed to be in Gym Class.

95. During the 2017 Incident, Defendant Barnwell, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 breached their duty of care to A.E Doe when they allowed G. Doe to physically assault A.E.J. Defendants knew or should have known that G. Doe had been suspended from school and was not supposed to be in Gym Class.

96. As a direct result of Defendant's negligence, A.E.J. was physically attacked by G. Doe. Because of this attack, A.E.J. was sick to her stomach, experienced neck pain, and was diagnosed with a concussion.

97. It was foreseeable to Defendants that G. Doe would be dangerous given that he had been suspended from school and was not allowed in Gym Class.

98. As a direct and proximate result of Defendant's actions Plaintiff A.E.J. has sustained extreme emotional distress and physical injuries.

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 24 of 38

99. Defendant Barnwell, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 undertook their negligent actions within the scope of their employment with Defendant CHATHAM.

## SIXTH CAUSE OF ACTION
### Negligence
### (Against Defendant Gym Teacher Doe B, Doe Defendants 1-20, Defendant Chatham)

100. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

101. During the 2018-2019, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 owed A.E.J. a reasonable duty as in loco parentis. As educators, the Defendants had a duty to ensure that A.E.J. was educated in a safe secure manner free from the risk of physical assault.

102. During the 2019 Incident, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 breached their duty of care to A.E.J. when they failed to supervise M. Doe and allowed him to physically assault A.E.J. Given the extensive history of bullying that A.E.J. and B.A.J. had experienced and given the fact that JORDAN had extensively relayed these experiences to Bennett personnel, the Defendants knew or should have known that A.E.J. would be a likely target for bullying.

COMPLAINT                                    - 25 -

103.   As a direct result of Defendant's negligence, A.E.J. was physically attacked by M. Doe.

104.   As a result of the 2019 Incident, A.E.J. suffered several medical consequences, including:

     a. A.E.J. suffered a severe concussion.

     b. A.E.J. suffered damage to her C-2 to C-7 vertebrae.

     c. A.E.J. continues to suffer from post-concussion syndrome.

105.   As a result of the damage to her vertebrae, A.E.J. suffered from pronounced balance problems as well as issues with locomotion.

106.   A.E Doe's vision was and continues to be severely impaired because of the 2019 incident. A.E.J. suffers from double vision which causes her severe nausea and persistent migraine headaches.

107.   Furthermore, A.E.J.'s ability to read has now been compromised due to her vision problems. As a result, A.E.J. now requires special accommodations in order participate in school activities. A.E.J. did not require any school accommodations before the 2019 Incident.

108.   Despite the accommodations, A.E.J.'s grades have drastically fallen as a result of her reading problems. Because of her reading problems, A.E.J. was unable to complete an early college course that would have

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 26 of 38

put her on track to accomplish her dreams of becoming a veterinarian. Had A.E.J. not suffered from vision problems; she would have been able to complete the early college course.

109. The severe physical harm inflicted on A.E.J. because of the 2019 Incident has also caused A.E.J. to develop severe depression. A.E.J. has lost over 30 pounds since the 2019 Incident and continues to experience intense feelings of hopelessness and despair.

110. As a result of the severe physical and mental damage that A.E.J. has suffered from the 2019 Incident, she has had to see multiple doctors, therapists, and other medical specialists. A.E.J. continues to require intense medical support. Since the 2019 Incident, JORDAN has had to expend thousands of dollars and continues to have to spend considerable amounts of money to pay for A.E.J.'s treatment

111. As a direct and proximate result of Defendant's actions A.E.J. has sustained extreme emotional distress and physical injuries and JORDAN has incurred thousands of dollars of medical expenses and continues to incur medical expenses.

112. Defendant Gym Teacher Doe B, and Doe Defendants 1-20 undertook their negligent actions within the scope of their employment with Defendant CHATHAM.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against Defendant G. Doe)

113. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

114. During the 2017 Incident, G. Doe owed A.E.J. a reasonable duty of care. As part of that duty, G. Doe owed A.E.J. a duty not to engage in behavior that would cause her extreme emotional distress.

115. When G. Doe approached A.E.J. and struck her in the head, M. Doe was aware that he would cause significant distress to A.E.J.

116. As a result of being struck by A.E.J. suffered from extreme emotional distress.

117. In addition to experiencing emotional distress from experiencing the 2017 Incident itself, A.E.J. has also experienced emotional distress from the severe physical and emotional toll that the 2019 incident took on her.

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 28 of 38

118. As a direct and proximate result of G. Doe's actions, A.E.J. experienced and continues to experience severe emotional distress including depression.

### EIGHTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against Defendant G. Doe)

119. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

120. During the 2017 Incident, G. Doe owed a B.A.J. a reasonable duty of care. As part of that duty, G. Doe owed B.A.J. a duty not to engage in behavior that would cause her extreme emotional distress.

121. During the 2017 Incident, G. Doe engaged in extreme and outrageous conduct when, unprovoked approached A.E.J. and hit her with a ball repeatedly. B.A.J. was standing next to A.E.J. when A.E.J. was attacked

122. When G. Doe approached A.E.J. and struck her in the head, M. Doe was aware that B.A.J. was A.E.J.'s sister. G. Doe was aware that by attacking A.E.J., he would cause significant distress to B.A.J.

123. In addition to experiencing emotional distress from witnessing the 2019 Incident itself, B.A.J. has also experienced emotional distress

COMPLAINT                                    - 29 -

from witnessing the severe physical and emotional toll that the 2019 incident took on A.E.J.

124.    As a direct and proximate result of G. Doe's actions, B.A.J. experienced and continues to experience severe emotional distress including depression.


## NINTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against Defendant M. Doe)

125.    Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

126.    During the 2019 Incident, M. Doe owed A.E.J. a reasonable duty of care. As part of that duty, M. Doe owed A.E.J. a duty not to engage in behavior that would cause her extreme emotional distress.

127.    When M. Doe approached A.E.J. and struck her in the head, M. Doe was aware that he would cause significant distress to A.E.J.

128.    As a result of being struck by A.E.J. suffered from extreme emotional distress.

129.    In addition to experiencing emotional distress from experiencing the 2019 Incident itself, A.E.J. has also experienced emotional distress

COMPLAINT                        – 30 –

from the severe physical and emotional toll that the 2019 incident took on her.

130. As a direct and proximate result of M. Doe's actions, A.E.J. experienced and continues to experience severe emotional distress including depression.


## TENTH CAUSE OF ACTION
## Negligent Infliction of Emotional Distress
## (Against Defendant M. Doe)

131. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

132. During the 2019 Incident, M. Doe owed a B.A.J. a reasonable duty of care. As part of that duty, M. Doe owed B.A.J. a duty not to engage in behavior that would cause her extreme emotional distress.

133. During the 2019 Incident, M. Doe engaged in extreme and outrageous conduct when, unprovoked approached A.E.J. and hit her with a ball in her left temple with extreme force. B.A.J. was standing next to A.E.J. when A.E.J. was attacked

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 31 of 38

134.   When M. Doe approached A.E.J. and struck her in the head, M. Doe was aware that B.A.J. was A.E.J.'s sister.   M. Doe was aware that by attacking A.E.J., he would cause significant distress to B.A.J.

135.   In addition to experiencing emotional distress from witnessing the 2019 Incident itself, B.A.J. has also experienced emotional distress from witnessing the severe physical and emotional toll that the 2019 incident took on A.E.J.

136.   As a direct and proximate result of M. Doe's actions, B.A.J. experienced and continues to experience severe emotional distress including depression.

## ELEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
**(Against Defendant Barnwell, Defendant Gym Teacher Doe A, Doe Defendants 1-20, Defendant Chatham)**

137.   Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

138.   During the 2017-2018 School Year, Defendant Barnwell, Defendant Gym Teacher Doe A, and Doe Defendants 1-20 owed B.A.J. a reasonable duty as in loco parentis. As educators, the Defendants had a duty to ensure that B.A.J. was educated in a safe secure manner free

COMPLAINT                                    - 32 -

from the risk of having to witness severe harm inflicted on a family member.

139. During the 2017 Incident, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 breached their duty of care to B.A.J. when they failed to supervise G. Doe and allowed him to physically assault A.E.J. right in front of B.A.J. Defendants knew or should have known that G. Doe had been suspended from school and was not supposed to be in Gym Class. Furthermore, Defendants knew or should have known that G Doe would engage in emotionally damaging behavior given that he had been suspended from school and was not allowed in Gym Class.

140. In addition to experiencing emotional distress from witnessing the 2017 Incident itself, B.A.J. has also experienced emotional distress from witnessing the severe physical and emotional toll that the 2017 incident took on A.E.J.

141. As a direct and proximate result of Defendant's negligence B.A.J. has sustained extreme emotional distress including depression.

142. Defendant Barnwell, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 undertook their negligent actions within the scope of their employment with Defendant CHATHAM.

Case 1:22-cv-00012-WO-JEP Document 1 Filed 01/10/22 Page 33 of 38

## TWELVTH CAUSE OF ACTION
## Negligent Infliction of Emotional Distress
## (Against Defendant Gym Teacher Doe B, Doe Defendants 1-20,
## Defendant Chatham)

143.  Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

144.  During the 2018-2019 school year, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 owed B.A.J. a reasonable duty as in loco parentis.  As educators, the Defendants had a duty to ensure that B.A.J. was educated in a safe secure manner free from the risk of having to witness severe harm inflicted on a family member.

145.  During the 2019 Incident, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 breached their duty of care to B.A.J. when they failed to supervise M. Doe and allowed him to physically assault A.E Doe right in front of B.A.J. Given the extensive history of bullying that A.E.J. and B.A.J. had experienced and given the fact that JORDAN had extensively relayed these experiences to Bennett personnel, the Defendants knew or should have known that A.E.J. would be a likely target for bullying.  Furthermore, Defendants knew or should have

**COMPLAINT**                  - 34 -

known that B.A.J. would experience significant emotional distress by witnessing by sister being attacked.

146. In addition to experiencing emotional distress from witnessing the 2019 Incident itself, B.A.J. has also experienced emotional distress from witnessing the severe physical and emotional toll that the 2019 incident took on A.E.J.

147. As a direct and proximate result of Defendant's negligence B.A.J. has sustained extreme emotional distress including depression.

148. Defendant Gym Teacher Doe B, and Doe Defendants 1-20 undertook their negligent actions within the scope of their employment with Defendant CHATHAM.

## THIRTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
**(Against Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, Doe Defendants 1-20, Defendant Chatham)**

149. Plaintiffs incorporate by reference every preceding allegation as if specifically set forth herein.

150. Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 owed A.E.J. a

COMPLAINT                                    - 35 -

reasonable duty as in loco parentis. As educators, the Defendants had a duty to ensure that A.E.J. was educated in a safe secure manner free from the risk of having to witness severe harm inflicted on a family member.

151. Defendants breached their duty of care to A.E.J. when they failed prevent the widespread bullying experienced by B.A.J., thereby subjecting A.E.J. to the pain of having to witness her sister's bulling. Given the extensive history of bullying that A.E.J. and B.A.J. had experienced and given the fact that JORDAN had extensively relayed these experiences to Bennett personnel, the Defendants knew or should have known that B.A.J. would be a likely target for bullying. Furthermore, Defendants knew or should have known that A.E.J. would experience significant emotional distress by witnessing her sister being bullied.

152. As a direct and proximate result of Defendant's negligence B.A.J. has sustained extreme emotional distress including depression.

153. Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 undertook their

Case 1:22-cv-00012-WO-JEP   Document 1   Filed 01/10/22   Page 36 of 38

negligent actions within the scope of their employment with Defendant
CHATHAM.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant him relief as
follows:

(1) Compensatory damages for past, ongoing, and future medical bills,
until the minor Plaintiffs reach age 18.

(2) Compensatory damages for past, ongoing, and future damage to
reputation, humiliation, mental anguish, and emotional distress.

(3) Punitive damages against the defendant.

(4) Attorneys' fees.

(5) Costs of the suit.

(6) Such other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this
action.

**COMPLAINT**                    - 37 -

Dated: January 10 2022 Respectfully Submitted,

Susie Jordan, *pro se*
1925 Hoyt Scott Road
Bear Creek, North Carolina  27207
Telephone: (910) 619-1100
craftiekids@gmail.com

**COMPLAINT** - 38 -