IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ABIGAIL JORDAN and BERTA      )
JORDAN, individually,         )
                              )
          Plaintiffs,         )
                              )
     v.                       )        1:22-CV-12
                              )
CHATHAM COUNTY BOARD OF       )
EDUCATION; DAN BARNWELL;      )
G. DOE (a minor); M. DOE      )
(a minor); GYM TEACHER DOE A; )
GYM TEACHER DOE B; DOES 1     )
through 20,                   )
                              )
          Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is a Motion to Dismiss Amended Complaint filed by Defendant Chatham County Board of Education ("Chatham"). (Doc. 21.) For the reasons stated herein, Chatham's motion will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (internal quotation mark omitted) (quoting King v. Rubenstein, 825 F.3d 206, 212

(4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiffs, are as follows.

Plaintiffs Abigail ("Abigail") and Berta ("Berta") Jordan are sisters who attended the Bennett School in the Chatham County Public School System from 2012 to 2019. (Am. Compl. (Doc. 20) ¶ 23.)[1] Both were "excellent students with above-average grades," and Abigail "has been mentioned in the local newspaper for being an outstanding honor roll student." (Id. ¶ 24.)

Berta has Asperger's syndrome, a condition on the autism spectrum, which caused her to be "bullied by her peers at Bennett from her first day at the school in 2012." (Id. ¶¶ 25–26.) Bennett's staff were aware of Berta's Asperger's syndrome "for the entirety of her enrollment at Bennett." (Id. ¶ 25.) Specifically, two students "regularly bullied [Berta] on the basis of [her] autism" by taking turns "preventing [Berta] from using the bathroom to such an extent that [Berta] would soil the clothes she was wearing." (Id. ¶¶ 27–28.) "This behavior occurred so often that [Berta's mother] would sometimes have to come to the school several times per week in order to provide

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[Berta] with new clothes." (Id. ¶ 28.) One of these alleged bullies is the daughter of Defendant Dan Barnwell ("Defendant Barnwell"), the Principal of Bennett during the 2017-2018 School Year. (Id. ¶¶ 8, 27.) "Over the course of several years," Berta's mother spoke "weekly . . . with [Defendant] Barnwell, in his role as the school principal, about his daughter's bullying behavior toward [Berta]," but Defendant Barnwell "did nothing to help" Berta or her mother. (Id. ¶ 29.)

During physical education class on September 11, 2017, Berta "was pushed to the floor." (Id. ¶ 30.) As her sister Abigail went over to help Berta sit on a bench, Defendant G. Doe, a boy in the class, approached Abigail and "hit her with a ball in the head . . . in a repetitious manner five (5) or six (6) times, without the ball ever leaving his hand." (Id.) At the time this incident occurred, G. Doe was "under suspension" and "should have never been allowed to be in the PE class." (Id. ¶ 31.) Both Plaintiffs were affected by this incident. Berta was "left with large bruises" from being pushed to the floor, and Abigail was diagnosed with a concussion after she "felt sick to her stomach and had neck pain" for days after the incident. (Id. ¶¶ 32, 33.) During the 2017-2018 School Year, Defendant Gym Teacher Doe A ("Gym Teacher Doe A") was a gym teacher at Bennett. (Id. ¶ 9.)

Plaintiffs' mother "was never informed of the September 2017 incident by the school, but instead had to be told by other parents." (Id. ¶ 34.) On September 15, 2017, Plaintiffs' mother "had a phone call with Tracy Fowler, Executive Director of Student Services at [Chatham] to discuss the September 2017 Incident." (Id. ¶ 35.) During this phone call, Plaintiffs' mother "mentioned the ongoing bullying against [Berta]. No action was taken as a result of this phone call." (Id.) On September 19, 2017, Plaintiffs' mother met with Barnwell and Fowler to discuss the incident. (Id. ¶ 36.) Barnwell informed Plaintiff's mother that there was video footage of the incident but denied Plaintiffs' mother's request to see the footage. (Id.) Barnwell also denied Plaintiffs' mother's request to speak with the gym teacher about the incident. (Id.) Plaintiffs allege that this "effectively shielded [their mother] from all evidence of what had happened." (Id.) During this September 19 meeting, Plaintiffs' mother "again raised the issue of systematic bullying at Bennett School against [Berta]," but "[a]gain, nothing was done to help [Berta]." (Id. ¶ 37.)

After the September 11, 2017, incident, Plaintiffs "no longer felt safe" at Bennett School. (Id. ¶ 39.) "As a result, [Plaintiffs' mother] made the difficult decision to homeschool [Plaintiffs] for approximately five months from September 2017,

- 4 -

until February 2018." (Id. ¶ 40.) "Based on the September 2017 incident, and other similarly outrageous incidents," Defendant Barnwell resigned from his position as Bennett's principal in early 2018. (Id. ¶ 38.)

In January 2019, "again during PE class," Defendant M. Doe, another student, "was standing less than ten feet away from [Abigail][2] when he slammed the ball in her left temple." (Id. ¶ 41.) "The impact of the hit was so severe, that [Abigail] does not remember being hit," and video footage accessed by Plaintiffs' mother shows Abigail "trying to walk, and then tumbling to the floor." (Id. ¶ 42.) During the 2018-2019 School Year, Defendant Gym Teacher Doe B ("Gym Teacher Doe B") was a gym teacher at Bennett. (Id. ¶ 10.)

As a result of this incident, Abigail was diagnosed with "a severe concussion and damage to the C-2 to C-7 vertebrae in her neck and upper back," as well as "post-concussion syndrome." (Id. ¶ 43-44.) Abigail's post-concussion syndrome has had "a severe negative impact[]" on her vision, "including, but not limited to, diminishing vision and eye coordination" causing her

---

[2] The amended complaint states that "classmate M. DOE was standing less than ten feet away from **her** when he slammed the ball . . . ." (Am. Compl. (Doc. 20) ¶ 41 (emphasis added).) This allegation does not specify which Plaintiff was hit by M. Doe, however, based on context and other allegations, this court assumes that "her" refers to Abigail.

- 5 -

to suffer from double vision, resulting in "continuous motion sickness and constant migraine headaches to the extent that she must take migraine medication," and her "ability to read has been jeopardized." (Id. ¶¶ 45–46.) Abigail also has "difficulty with her vestibular system," which is "essential to normal movement and equilibrium." (Id. ¶ 45.)

"The cost of necessary treatment and therapies stemming from [Abigail's] injuries from the January 2019 incident has reached several thousand dollars." (Id. ¶ 47.) Additionally, Abigail "now needs special accommodations to continue school," and "was unable to continue her early college program. Had she not been injured, [Abigail] would have finished her early college program, [and] would have started college." (Id. ¶ 48.) After the 2017 and 2019 incidents, Chatham "failed to provide accommodations to [Plaintiffs]," stating that "they did not have a qualified teacher in the building." (Id. ¶ 49.) Further, Chatham "failed to follow the IEP that was in place" for Plaintiffs." (Id. ¶ 50.) "As a result of their experiences at Bennett," Plaintiffs "both suffer from severe depression," and Abigail "has also lost more than 30 lbs. since January of 2019." (Id. ¶ 51.)

Plaintiffs bring thirteen total claims against Defendants, including Chatham and various Bennett employees: Defendant

- 6 -

Barnwell, Gym Teacher Doe A, Gym Teacher Doe B, and Does 1-20 ("Doe Defendants")[3] (collectively "Chatham Employees"). Two individual Doe Defendants, identified as G. Doe and M. Doe, are minor children identified as parties in the Amendment Complaint, (Am. Compl. (Doc. 20) ¶¶ 3, 4), and are named defendants in the Third and Fourth Causes of Action, (id. at 18-23), the Seventh, Eighth, Ninth, and Tenth Causes of Action, (id. at 28, 30, 32, 33). G. Doe and M. Doe are not included as Doe Defendants in this opinion, as they are currently unknown and unserved.

Plaintiffs' individual causes of action are somewhat confusingly pled. For example, the First Cause of Action, brought pursuant to Title II of the Americans with Disabilities Act, has a subtitle of "Against Defendant Chatham." (Id. at 11.) Plaintiffs allege that Berta "suffered as a direct and proximate result of Defendant's unlawful discrimination," (id. ¶ 62), which appears to contend Defendant Chatham acted unlawfully. However, in the prayer for relief, Plaintiff prays for "judgment against Defendants and in favor of Plaintiff," (id.), suggesting that Plaintiff may be seeking relief under the First Cause of Action against all Defendants. The same potential confusion arises under the Second Cause of Action. (See id. at 14-18.)

---

[3] Doe Defendants are individuals employed by Chatham during all times relevant to this litigation, whose names and job titles are currently unknown. (Id. ¶ 11.)

This court finds that the prayer for relief as to each individual cause of action is not sufficient to modify the substantive allegations of the language in the cause of action, and therefore the First and Second Cause of Action allege violations as to Defendant Chatham only.

Plaintiffs allege that Chatham's action violated Title II of the Americans with Disabilities Act ("ADA"), as well as Section 504 of the Rehabilitation Act. (Id. ¶¶ 55-72; "Claims I and II.") Claims V and VI allege negligence against Chatham, Defendant Barnwell, Doe Defendants, Gym Teacher Doe A (Claim V), and Gym Teacher Doe B (Claim VI), for the 2017 (Claim V) and 2019 (Claim VI) gym incidents, with regard to Abigail. (Id. ¶¶ 91-111.) Claims XI and XII allege negligent infliction of emotional distress against Chatham, Defendant Barnwell, Doe Defendants, Gym Teacher Doe A (Claim XI), and Gym Teacher Doe B (Claim XII), for the 2017 (Claim XI) and 2019 (Claim XII) gym incidents, with regard to Berta, for witnessing Abigail's bullying. (Id. ¶¶ 136-147.) Claim XIII alleges negligent infliction of emotional distress against Chatham, Defendant Barnwell, Doe Defendants, Gym Teacher Doe A, and Gym Teacher Doe B, with regard to Abigail, for witnessing Berta's bullying. (Id. ¶¶ 148-152.)

- 8 -

## II.  **PROCEDURAL HISTORY**

This suit was initially filed by Plaintiffs' mother as guardian ad litem for Plaintiffs on January 10, 2022. (Compl. (Doc. 1) at 1.) Chatham moved to dismiss on November 14, 2022 (Doc. 17), and supported this motion with a brief, (Doc. 18), and three exhibits, including Plaintiffs' birth certificates, (Doc. 17-1), an affidavit by the records custodian for the North Carolina School Boards Trust, (Doc. 17-2), and an affidavit by Chatham's Chief Finance Officer, (Doc. 17-3).

Plaintiffs filed an amended complaint, (Doc. 20), on December 5, 2022, and Chatham again moved to dismiss, (Docs. 21, 22). Chatham's second motion to dismiss and its supporting brief did not include the three exhibits attached to its first motion to dismiss, but these exhibits are incorporated by reference in Chatham's motion to dismiss and its supporting brief. (See Chatham County Board of Education's Mot. to Dismiss Am. Compl. (Doc. 21) at 2; Mem. of Law in Supp. of Chatham County Board of Education's Mot. to Dismiss Am. Compl. ("Chatham's Br.") (Doc. 22) at 10.) Plaintiffs filed a response, (Doc. 27), on February 8, 2023, and Chatham filed a reply, (Doc. 28), on February 22, 2023. Chatham's second motion to dismiss, (Doc. 21), is now ripe for ruling.

Case 1:22-cv-00012-WO-JEP   Document 32   Filed 09/29/23   Page 9 of 26

## III. **STANDARDS OF REVIEW**

### A.    **12(b)(1) and 12(b)(2)**

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case, and must be decided before a determination on the merits of the case. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479-80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). The burden of proving subject matter jurisdiction rests with the plaintiff. McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, a court "may consider evidence outside the pleadings, and should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant may challenge subject-matter jurisdiction facially or factually. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, a defendant asserts that the allegations, taken as true, are insufficient to establish subject-matter jurisdiction. See id. The court then effectively affords a plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," taking the facts as true and denying the Rule 12(b)(1) motion if the complaint "alleges sufficient facts to invoke subject matter jurisdiction." Id. (quoting Adams, 697 F.2d at 1219). In a factual challenge, a defendant asserts that the jurisdictional allegations are false, and the court may look beyond the complaint to resolve the disputed jurisdictional facts without converting the motion to one for summary judgment. Id. at 192–93. However, where the Eleventh Amendment bar has been asserted by a party, that party has the burden of proving that it is entitled to immunity. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014).

### B. **12(b)(6)**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

_Twombly_, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." _Id._

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. _Id._ Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." _Est. of Williams-Moore v. All. One Receivables Mgmt., Inc._, 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." _Iqbal_, 556 U.S. at 678.

Generally, in resolving a Rule 12(b)(6) motion to dismiss, "a district court cannot consider matters outside the pleadings without converting the motion into one for summary judgment." _Occupy Columbia v. Haley_, 738 F.3d 107, 116 (4th Cir. 2013) (citing Fed. R. Civ. P. 12(d)). The court can, however, properly consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." _Philips v. Pitt Cnty. Mem'l Hosp._, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). As

- 12 -

is the case before this court, "when the plaintiff attaches or incorporates a document upon which his claim is based," and contradictions or inconsistencies exist between the complaint and any attached or incorporated documents, "crediting the document over conflicting allegations in the complaint is proper." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). Neither party has challenged the authenticity of the exhibits attached to Chatham's first motion to dismiss, (Docs. 17-1, 17-2, 17-3), therefore this court will consider them in ruling on Chatham's motion to dismiss.

IV. **ANALYSIS**

A. **ADA and Rehabilitation Act Claims**

Plaintiffs first allege that Chatham violated Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying Berta reasonable accommodations for her Asperger's syndrome in the form of failing to prevent her from being bullied by classmates. (Am. Compl. (Doc. 20) ¶¶ 55–72.) Defendants move to dismiss these claims, arguing that Plaintiffs have failed to state a claim under both Title II and Section 504. (Chatham's Br. (Doc. 22) at 11.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be

- 13 -

excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"To the extent possible, [courts] construe the ADA and Rehabilitation Act to impose similar requirements. Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012) (internal citations omitted). To bring a claim under either statute, a plaintiff must establish: "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016).

- 14 -

To state a claim against an entity for "student-on-student" harassment or bullying under ADA Title II and Section 504, a plaintiff must show that (1) she was an individual with a disability, harassed by fellow students based on her disability; (2) "the disability-based harassment was sufficiently 'severe, pervasive, and objectively offensive' that it effectively deprived [her] of 'access to educational benefits and opportunities' at school;" and (3) "the school knew about the disability-based student-on-student harassment and was deliberately indifferent to it." S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty., 819 F.3d 69, 75–76 (4th Cir. 2016) (citing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 649–50 (1999); Est. of Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 996 (5th Cir. 2014); S.S. v. E. Kentucky Univ., 532 F.3d 445, 454 (6th Cir. 2008)).

The bar for "deliberate indifference" is high: "a school may not be held liable under . . . § 504 for what its students do, but only for what is effectively 'an official decision by [the school] not to remedy' student-on-student harassment." S.B. ex rel. A.L., 819 F.3d at 76–77 (quoting Davis, 526 U.S. at 642). "Thus, it is not enough that a school has failed to eliminate student-on-student harassment, or to impose the disciplinary sanctions sought by a victim. . . . Instead, a

school will be liable for student-on-student harassment only where its 'response . . . or lack thereof is clearly unreasonable in light of the known circumstances.'" Id. at 77 (quoting Davis, 526 U.S. at 648).

Plaintiffs allege that Berta was "denied reasonable accommodations for her disability" in violation of Title II and Section 504 in two ways. (Am. Compl. (Doc. 20) ¶¶ 61, 71.) First, Plaintiffs allege that Berta was "severely bullied," often publicly, "by her classmates because of her disability." (Id.) Plaintiffs also allege that school employees were aware of this bullying because Berta's mother "had to come to the school on a weekly basis to provide a change of clothes" for her when her classmates would bully her by preventing her from using the bathroom, "forcing her to soil her clothes." (Id.) Additionally, Berta's mother "attempted to address the bullying of [Berta] with Barnwell on a weekly basis," but "[d]espite being aware of the situation, [Chatham], through its employees, did nothing to protect [Berta] and did not undertake any actions to curb the bullying." (Id.) Second, Plaintiffs allege that Berta was "singled [out] because of her disability when she was viciously pushed to the ground by a classmate" on September 11, 2017. (Id.) Again, Plaintiffs allege that "[d]espite being aware of [Berta's] propensity to be bullied, [Chatham], through its

- 16 -

employees, did nothing to prevent this incident and did not undertake any action afterward to prevent it from happening again." (Id.)

Plaintiffs clearly allege that Berta was an individual with a disability, specifically, Asperger's syndrome, and that she was harassed and bullied by classmates because of her Asperger's. (Id. ¶¶ 25–27; see also id. ¶ 57 ("Asperger's syndrome often causes [Berta] to behave in a manner that is considered unusual. This behavior in turn often causes [Berta] to be bullied by her peers.").) Plaintiffs' allegations that Berta's bullies prevented her from using the restroom at school to the point where she regularly soiled her clothing, (id. ¶ 28), is certainly harassment that is sufficiently "severe, pervasive, and objectively offensive" such that Berta was deprived of educational opportunities and benefits at school.

Though sparse, Plaintiffs' allegations regarding Chatham's knowledge that Berta was bullied because of her Asperger's syndrome are sufficient to warrant an inference that Chatham may have been deliberately indifferent to the harassment and bullying Berta faced. Plaintiffs allege that one of Berta's regular bullies was the daughter Defendant Dan Barnwell, the Bennett School principal, (id. ¶¶ 27, 28), and Plaintiffs allege that their mother spoke with Barnwell in his capacity as

- 17 -

principal "weekly . . . about his daughter's bullying behavior toward [Berta]," (id. ¶ 29.) Plaintiffs further allege that Barnwell

> informed [Plaintiffs' mother] that there existed video footage of [the September 2017 incident]. However, [Plaintiffs' mother's] request to see it was denied by Barnwell. Barnell also refused to allow [Plaintiffs' mother] to speak with the gym teacher about the September 2017 Incident. In doing so, Barnwell effectively shielded [Plaintiffs' mother] from all evidence of what had happened.

(Id. ¶ 36.) During that same meeting, Plaintiffs allege that their mother "again raised the issue of systematic bullying at Bennett School against [Berta]," but nothing was done to help Berta. (Id. ¶ 37.) From these facts, particularly considering the allegation that one of Berta's primary bullies was the school principal's child, and that the nature of Berta's bullying was that so severe that she routinely soiled her clothing and the school was aware of this, it is reasonable for this court to infer that Chatham's "response . . . or lack thereof [was] clearly unreasonable in light of the known circumstances." S.B. ex rel. A.L., 819 F.3d at 77. For these reasons, this court finds that Plaintiffs have plausibly alleged facts stating a claim to relief under ADA Title II and Section 504 of the Rehabilitation Act. Therefore, Chatham's motion to dismiss Claims I and II of the complaint must be denied.

**B.** <u>**State Law Claims Against Chatham**</u>

Plaintiffs allege state law claims for negligence and negligent infliction of emotional distress against Chatham. (Am. Compl. (Doc. 20) at 26, 28, 35, 37, 39 (Fifth, Sixth, Eleventh, Twelfth, and Thirteenth Causes of Action).) Chatham argues that Plaintiffs' state law tort claims should be dismissed under Rule 12(b)(1) because Chatham is entitled to governmental immunity. (Chatham's Br. (Doc. 22) at 9-11.) Plaintiffs allege that Chatham has waived its governmental immunity[4] from tort claims "by obtaining liability insurance for the negligence of torts of its agents or employees" pursuant to N.C. Gen. Stat. § 115C-42. (Am. Compl. (Doc. 20) ¶¶ 6-7.) Chatham argues that it has not waived immunity because it has only "elected to participate in the North Carolina School Boards Trust," and has not otherwise

---

[4] Though the parties use the phrases "sovereign immunity" and "governmental immunity" interchangeably, (<u>see</u> Am. Compl. (Doc. 20) ¶¶ 6-7; Chatham's Br. (Doc. 22) at 9-11; Pls.' Resp. in Opp. to Def. Chatham County Board of Education's Mot. to Dismiss Am. Compl. ("Pls.' Resp.") (Doc. 27) at 3; Reply in Supp. of Chatham County Board of Education's Mot. to Dismiss Am. Compl. ("Chatham's Reply") (Doc. 28) at 2), "[i]t is well settled that a local school board is not 'the State of North Carolina' for ordinary legal purposes. There is a difference between the State and state agencies — which possess sovereign immunity — and local government entities such as local school boards — which possess only governmental immunity, not sovereign immunity," <u>Devore for Horton v. Samuel</u>, 287 N.C. App. 24, 27, 882 S.E.2d 389, 392 (2022) (citing <u>State ex rel. Stein v. Kinston Charter Acad.</u>, 379 N.C. 560, 886 S.E.2d 647 (2021)).

purchased any general liability insurance coverage. (Chatham's
Br. (Doc. 22) at 10.)

"Under North Carolina law, a board of education is a
governmental agency and is 'not ordinarily liable in a tort
action unless the board has waived its sovereign immunity.'"
G.D. by & through S.G. v. Kannapolis City Schs. Bd. of Educ.,
1:22-CV-1001, 2023 WL 3125342, at *6 (M.D.N.C. Apr. 27, 2023)
(quoting Herring v. Liner, 163 N.C. App. 534, 537, 594 S.E.2d
117, 119 (2004)). Pursuant to N.C. Gen. Stat. § 115C-42, "a
board may waive its sovereign immunity by securing liability
insurance that 'actually indemnifies the board of education or
its employees.'" Id. "A coverage agreement with the North
Carolina School Boards Trust [NCSBT] 'does not waive [sovereign]
immunity because the NCSBT does not qualify as liability
insurance under section 155C-42.'" Id. (quoting J.W. v. Johnston
Cnty. Bd. of Educ., No. 11-CV-707, 2012 WL 4425439, at *10
(E.D.N.C. Sept. 24, 2012) (collecting cases)).

By arguing that it has not purchased liability insurance
sufficient to constitute a waiver of sovereign immunity under
N.C. Gen. Stat. § 115C-42, Chatham makes a factual challenge to
subject-matter jurisdiction. Therefore, Chatham has the burden
of proving it is entitled to immunity, Hutto, 773 F.3d at 543,
and the court may look beyond the complaint to resolve the

- 20 -

disputed jurisdictional facts without converting the motion to one for summary judgment. Kerns, 585 F.3d at 192-93.

Here, Chatham provides undisputed evidence that, though it is a member of the NCSBT, it has not waived immunity. (See Chatham's Br. (Doc. 22) at 10.) Chatham's agreement with the NCSBT states that "the NCSBT Coverage Agreement **expressly is not considered a waiver of governmental immunity** as provided in N.C.G.S. § 115C-42." (Doc. 17-2 at 4; Chatham's Br. (Doc. 22) at 10 (emphasis added).) Further, Chatham's Chief Finance Officer attested in an affidavit that Chatham "has not purchased or otherwise secured any liability insurance coverage or risk protection for claims other than that which it has obtained by virtue of its participation in the [NCSBT]," as well as that Chatham "has not waived immunity from suit under N.C. Gen. Stat. § 115C-42 by purchasing or otherwise obtaining any contract or policy of insurance[.]" (Doc. 17-3 at 1; Chatham's Br. at 10.)

Plaintiffs do not respond to Chatham's arguments and evidence that it has not waived sovereign immunity by purchasing liability insurance under N.C. Gen. Stat. § 115C-42. Because Chatham's proffered evidence reflects that it participates in the NCSBT, which does not constitute a waiver of sovereign immunity, and has not otherwise purchased any liability insurance, this court finds that Chatham is entitled to

- 21 -

sovereign immunity as to Plaintiffs' state law claims, therefore Claims V, VI, XI, XII, and XIII must be dismissed as to Chatham.

## C. State Law Claims Against Chatham Employees

Plaintiffs allege negligence and negligent infliction of emotional distress against Chatham Employees: Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, and Doe Defendants 1-20. (Am. Compl. (Doc. 20) ¶¶ 91-111, 136-152 (Claims V, VI, XI, XII, XIII).) This court must determine whether Plaintiffs are suing Chatham Employees in their individual or official capacities. When a plaintiff sues a local government officer or employee in the person's official capacity, the plaintiff is in effect suing the government entity that employs that individual. Meyer v. Walls, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997). Thus, governmental immunity can be a defense to a plaintiff's tort claims against a person sued in their official capacity. Mullis v. Sechrest, 347 N.C. 548, 555, 495 S.E.2d 721, 725 (1998) (teacher sued in his official capacity was entitled to governmental immunity to the same extent as local school board).

For state law claims, North Carolina jurisprudence requires that a complaint specify whether a plaintiff sues a public official or employee in their individual or official capacity. White v. Trew, 366 N.C. 360, 364, 736 S.E.2d 166, 169 (2013);

- 22 -

Mullis, 347 N.C. at 552-53, 495 S.E.2d at 723-25; Brattain v. Stanly Cnty. Bd. Of Educ., No. 19cv1037, 2020 WL 6364718, at *3 (M.D.N.C. Oct. 29, 2020); White v. City of Greensboro, 532 F. Supp. 3d 277, 328 (M.D.N.C. 2021), on reconsideration in part, 586 F. Supp. 3d 466 (M.D.N.C. 2022). If the capacity in which a defendant is sued is unclear, the court "must presume that the defendant is being sued only in his official capacity." White, 366 N.C. at 364, 736 S.E.2d at 169.

To determine whether a public official or employee is being sued in their official or individual capacity,

> Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable. For example, including the words "in his official capacity" or "in his individual capacity" after a defendant's name obviously clarifies the defendant's status. In addition, the allegations as to the extent of liability claimed should provide further evidence of capacity. Finally, in the prayer for relief, plaintiffs should indicate whether they seek to recover damages from the defendant individually or as an agent of the governmental entity. These simple steps will allow future litigants to avoid problems such as the one presented to us by this appeal.

White, 366 N.C. at 364, 736 S.E.2d at 169; see also Brattain, 2020 WL 6364718, at *3; Thorpe v. Barrow, No. 15-CV-511, 2017 WL 3497551, at *3 (E.D.N.C. Aug. 15, 2017); Davis v. Matroo, No. 13-CV-00233, 2013 WL 5309662, at *3 (E.D.N.C. Sept. 19, 2013).

Plaintiffs' caption names Defendants as "Chatham County Board of Education, et. al." (Am. Compl. (Doc. 20) at 1.) The

- 23 -

caption does not individually name the Defendants or include the words "official capacity" or "individual capacity" with respect to the individually named Defendants. (Id.)

The allegations in the amended complaint do not provide clarity as to whether the Chatham Employees are being sued in their individual or official capacity. The headings of each cause of action brought against Chatham Employees do not state in what capacity they are being sued, and Plaintiffs fail to mention the words "individual capacity" anywhere in their amended complaint.[5]

Turning to the relief sought, Plaintiffs seek actual damages and an injunction against Defendant Barnwell, Defendant Gym Teacher Doe A, Gym Teacher Doe B, and Doe Defendants 1-20. (Id. at ¶¶ 98, 111, 141, 147, 152.) However, there are no references in the prayer for relief that Defendants are being sued in their individual capacities. (See id.)

---

[5] Plaintiffs state in their response: "Defendants violation of Plaintiff's well established rights resulting in injury support Plaintiff's suit against the Defendants in both their official and individual capacities." (Pls.' Resp. (Doc. 27) at 3.) However, North Carolina law is clear that Plaintiffs must allege in their complaint whether they are suing Defendants in their individual or official capacities. White v. Trew, 366 N.C. 360, 364, 736 S.E.2d 166, 169 (2013). See also Mullis v. Sechrest, 347 N.C. 548, 554, 495 S.E.2d 721, 725-25 (1998) ("It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable. . . .").

Because it is not clear whether Plaintiffs are suing Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, and Doe Defendants 1-20 in their individual or official capacities, this court must presume they are named in their official capacity only. White, 366 N.C. at 364, 736 S.E.2d at 169 (if clarity as to "the capacity in which a defendant is being sued" "is lacking, we must presume that the defendant is being sued only in his official capacity") (citing Mullis, 347 N.C. at 552, 554, 495 S.E.2d at 723–25). In addition to the presumption set forth in White, the language of the amended complaint suggests official capacity state law claims. That language includes, inter alia, "[a]s educators, the Defendants had a duty to ensure that Abigail Jordan was educated in a safe secure manner." (Am. Compl. (Doc. 20) ¶¶ 92, 100, 149.) The language used to establish the duty violated appears to refer to an official capacity duty.

Official-capacity state law claims against an individual are treated as actions against the governmental entity. Mullis, 347 N.C. at 554-55, 495 S.E.2d at 725 ("official-capacity suits are merely another way of pleading an action against the governmental entity"). As explained above, Chatham is entitled to governmental immunity as to the state law claims in Claims V, VI, XI, XII, and XIII. Chatham Employees, sued in their official

- 25 -

capacity, are entitled to governmental immunity on the same state law claims. Therefore, Claims V, VI, XI, XII, and XIII must be dismissed as to Defendant Barnwell, Defendant Gym Teacher Doe A, Defendant Gym Teacher Doe B, and Doe Defendants 1-20.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Chatham's motion to dismiss, (Doc. 21), is **GRANTED IN PART** and Claims V, VI, XI, XII, and XIII are dismissed.

**IT IS FURTHER ORDERED** that Chatham's motion to dismiss, (Doc. 21), is **DENIED IN PART** as to Claims I and II and those claims shall proceed.

This the 29th day of September, 2023.

_____
United States District Judge

– 26 –